UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JESSICA HARRIS, next friend of                                                      PLAINTIFF
JOHN DOE

V.                                                      CIVIL ACTION NO.  3:18-CV-742-KHJ-FKB

GARY PARKER, in his Individual and Official                                      DEFENDANTS
Capacity, DR. TAWANZA DOMINO, in her
Individual and Official Capacity, and JACKSON
PUBLIC SCHOOL DISTRICT

ORDER

This action is before the Court on Jackson Public School District's Motion to Dismiss [25] and Dr. Tawanza Domino's Motion for Qualified Immunity [27]. For the reasons below, the Court grants both motions.

I.   Facts and Procedural History

Plaintiff Jessica Harris ("Harris") sues under 42 U.S.C. § 1983, on behalf of her son, John Doe ("Doe"), against Defendants Gary Parker ("Parker"), in his individual and official capacities, Dr. Tawanza Domino ("Domino"), in her official and individual capacities, and Jackson Public School District ("JPSD"), for alleged violations of Doe's rights under the Fourteenth Amendment of the United States Constitution. Harris alleges that during the relevant period, Doe was a student at Jim Hill High School, which is under JPSD's authority; Domino was the principal of

Jim Hill High School; and Parker was the guidance counselor at Jim Hill High School. Compl. [1] ¶¶ 4-7.

Harris alleges that "[b]eginning at some point prior to 2018, through March of 2018, Gary Parker repeatedly harassed John Doe." *Id.* ¶ 7. Doe informed JPSD and school officials that Parker's behavior made him "uncomfortable," but JPSD and Domino took no action against Parker. *Id.* ¶ 9. Parker's harassment culminated on March 21, 2018, when he "attempted to sexually assault John Doe by placing his hands on Jo[hn] Doe's penis and attempting to perform oral sex on John Doe." *Id.* ¶ 10.

Harris sued on Doe's behalf. Domino and JPSD answered, raising the defense of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Answer [8] at 1. JPSD later moved to dismiss [25] the claims against it and against Parker and Domino in their official capacities. Domino also filed her Motion for Qualified Immunity [27], seeking the dismissal of the claims against her in her individual capacity. Parker, however, has not moved to dismiss the claims against him in his individual capacity.

The Court stayed discovery pending the resolution of Domino's Motion for Qualified Immunity.

II. Standard

Both motions pending before the Court seek dismissal under Federal Rule of Civil Procedure 12(b)(6). In reviewing a motion under Rule 12(b)(6), "the central issue is whether, in the light most favorable to the plaintiff, the complaint states a

valid claim for relief." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (quoting *Hughes v. The Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001)) (alteration omitted). A valid claim for relief contains "sufficient factual matter, accepted as true," giving the claim "facial plausibility" and allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The plausibility standard does not ask for a probability of unlawful conduct but does require more than a "sheer possibility." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not satisfy a plaintiff's pleading burden. *Id.* (citing *Twombly*, 550 U.S. at 555).

III.     Domino's Motion for Qualified Immunity [27]

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 347 (5th Cir. 2017) (quoting *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc)). "A good-faith assertion of qualified immunity" shifts the burden of proof to the plaintiff "to show that the defense is not available." *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (internal citations omitted). To rebut Domino's assertion of qualified immunity, Harris must establish Domino "(1) violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged

3

conduct." *Brinsdon* 863 F.3d at 347 (quoting *Swanson*, 659 F.3d at 371) (internal quotations omitted).

      A.      Violation of a Statutory or Constitutional Right

When analyzing qualified immunity, this Court must first determine whether the plaintiff has properly pled a violation of a statutory or constitutional right. Harris alleges that Parker violated Doe's "constitutional right under the Fourteenth Amendment to personal security, to bodily integrity, and to be free from sexual harassment/sexual abuse by his counselor." Compl. [1] ¶ 14. Harris also claims that Domino is "personally liable to Plaintiff for Gary Parker's violation of his constitutional rights . . . ." *Id.* ¶ 15.

Sexual abuse and sexual harassment are both recognized violations of the Fourteenth Amendment. The Fifth Circuit has stated: "It is incontrovertible that bodily integrity is necessarily violated when a state actor sexually abuses a schoolchild and that such misconduct deprives the child of rights vouchsafed by the Fourteenth Amendment." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451-52 (5th Cir. 1994) (en banc). Furthermore, this Court has held "there is no question that sexual harassment is a deprivation of the right to equal protection and violates the Fourteenth Amendment." *Chestang v. Alcorn State Univ.*, 820 F. Supp. 2d 772, 780 (S.D. Miss. 2011); *see also Taylor*, 15 F.3d at 458 (noting that sexual harassment could violate the Equal Protection Clause but finding the court did not need to reach this issue).

Though the Complaint [1] implicates a deprivation of Doe's rights under the Equal Protection Clause by alluding to his "constitutional right under the Fourteenth Amendment . . . to be free from sexual harassment . . . ," [1] ¶ 15, neither party addresses this constitutional violation in their briefings. Instead, Domino's arguments center on Harris's bodily integrity claim under the Due Process Clause, and Harris responds only to the arguments asserted by Domino. As such, the Court addresses only this claim, and Harris's § 1983 claim against Domino based on the alleged violation of Doe's right against sexual harassment under the Fourteenth Amendment remains.

In *Taylor*, the Fifth Circuit articulated three factors necessary for a supervisory school official to be liable for a subordinate's violation of a student's right to bodily integrity:

(1) the defendant learned of facts or a pattern of inappropriate sexual behavior by a subordinate pointing plaining toward the conclusion that the subordinate was sexually abusing the student; and

(2) the defendant demonstrated deliberate indifference toward the constitutional rights of the student by failing to take action that was obviously necessary to prevent or stop the abuse; and

(3) such failure caused a constitutional injury to the student.

15 F.3d at 454.

    1.    Knowledge of a Pattern of Inappropriate Sexual Behavior

Harris must assert specific facts about Domino's knowledge of Parker's inappropriate sexual behavior. Harris makes two statements related to Domino's knowledge. First, Harris pleads that unspecified "school officials" had knowledge of

Parker's harassment of Doe. Compl. [1] ¶¶ 7-8. She also alleges that Domino "learned of facts or a pattern of inappropriate sexual behavior by Gary Parker which pointed plainly toward the conclusion that Gary Parker was sexually harassing/abusing John Doe." *Id.* ¶ 16. The first statement does not allege Domino had knowledge of any pattern of harassment by Parker, and the second statement is merely a recitation of the claim elements which is insufficient under the *Twombly/Iqbal* standard. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Even if Harris alleged sufficient facts to establish Domino's personal knowledge of Parker's harassment of Doe, no factual allegations support her conclusory statement that Domino's knowledge "pointed plainly toward the conclusion that Gary Parker was sexually . . . abusing John Doe." Compl. ¶ 16. Based on Harris's factual recitation, Parker's harassment did not escalate to sexual abuse until the attempted sexual assault on March 21, 2018. Compl. [1] ¶ 10. Any alleged knowledge of harassment could not "point[] plainly" to sexual abuse when Harris does not allege any sexual abuse occurred before this one instance. Harris has therefore not met her burden under the first prong of the *Taylor* test.

    2.    Deliberate Indifference[1]

If Harris could meet her burden to plead Domino had knowledge of Parker's sexual abuse of Doe, she would still need to plead sufficient facts to show Domino acted with deliberate indifference toward Doe's constitutional rights by failing to

---

[1] Though Harris's Complaint [1] fails under the first prong of *Taylor*, the Court will analyze each issue raised under Domino's qualified immunity defense as Harris has requested limited discovery on those issues where the allegations in her Complaint [1] are found insufficient.

6

take necessary action. *Taylor*, 15 F.3d at 454. Though Harris's allegations against Domino are insufficient recitations of the knowledge element of the *Taylor* test, she also states, "school officials did nothing to protect male students from Gary Parker" after they received notice of his behavior. Compl. [1] ¶¶ 10, 16. A school official is deliberately indifferent when she has knowledge about sexual abuse and does nothing to stop it. *See Taylor*, 15 F.3d at 457 (finding that if the principal had "responded at all" to his knowledge of the inappropriate relationship, "the violation of Jane Doe's rights would not have been as severe or prolonged"). Had Harris properly pleaded the first prong of the *Taylor* test, she would have properly pleaded the deliberate indifference second prong of the Taylor test since Harris is a school official.

        3.    Constitutional Injury

Finally, Harris would have to show that Domino's failure to act constitutionally injured Doe. *Taylor*, 15 F.3d at 457. Domino contends Parker's actions did not violate Doe's constitutional right to bodily integrity for two reasons: (1) Doe was seventeen years old at the relevant time, and (2) Parker was not acting under the color of state law.

Domino asserts that "[t]here is no binding authority on whether a student above the legal age of consent can allege a constitutional violation based on wholly consensual sexual relations with a school official." Memo. in Support [28] at 3. Domino somehow misconstrues the allegation that Parker "attempted to sexually assault" Doe as "wholly consensual sexual relations." Compl. [1] ¶ 10. To support

7

this conclusion, Domino relies only on the following footnote in *Hagan v. Houston Independent School District*:

> [W]e express no opinion as to whether the rights of schoolchildren described in *Doe* are implicated in the case of high school students who are no longer minors. In addition, we take no position as to whether a student who is above the legal age of consent can allege a constitutional violation based on wholly consensual sexual relations with a school teacher.

51 F.3d 48, 51 n.2 (5th Cir. 1995).

*Hagan* is different from this case. In *Hagan*, there was a question over whether the sexual relationship between one of the plaintiffs and the defendant was consensual. *See id.* at 50 (stating the student-plaintiff reported "he had been having sexual relations" with the teacher-defendant). Here, Doe accuses Parker of attempted sexual assault, which necessarily implies a lack of consent. Compl. [1] ¶ 10. And the first sentence of this footnote is also inapplicable. Though Doe was over the legal age of consent, he was still a minor under Mississippi law. *See* Miss. Code Ann. § 1-3-27 (defining "minor" as "any person . . . under twenty-one years of age").

Moreover, nothing in *Taylor* or any subsequent case suggests a student's right to bodily integrity under the Due Process Clause extinguishes once the student reaches the age of legal consent. In fact, *Taylor* relied on *Shillingford v. Holmes*, a § 1983 action brought by an adult tourist against a police officer. 15 F.3d at 450-51 (citing *Shillingford v. Holmes*, 634 F.2d 263, 265 (5th Cir. 1981)). Additionally, the right to bodily integrity has since been affirmed in cases involving legal adults. *See generally McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir.

2002) (per curiam) (discussing the right to bodily integrity in the context of a police detective loaning a gun to an informant). Given these cases, Domino's argument that Doe's right to bodily integrity cannot be violated because he was over the legal age of consent is unavailing.

Domino finally argues Parker was not acting under color of state law when he allegedly violated Doe's right to bodily integrity. Though the "color of state law" element applies only to § 1983 liability, the Fifth Circuit has held that, when the constitutional violation alleged is the Due Process Clause of the Fourteenth Amendment, "the state action and color of state law requirements are identical." *Doe v. Rains Cty. Indep. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995). For Parker to have acted under color of state law in the sexual abuse of a student, the Court must find "a 'real nexus' exists between the activity out of which the violation occurs and the [guidance counselor's] duties and obligations as a [guidance counselor]." *Taylor*, 15 F.3d at 452 n.4.

Domino contends the bare allegation that "Parker used his position as a school counselor to prey upon John Doe" is insufficient to meet Harris's pleading burden. Compl. [1] ¶ 10. Harris argues that Parker's employment as a guidance counselor at Jim Hill High School facilitated his sexual abuse of Doe. While the Court agrees that Parker would likely not have had access to Doe without his position, Harris has failed to plead even basic details showing a nexus between his position and the alleged sexual abuse. At minimum, Harris must establish where, when, and under what circumstances the sexual assault took place. As a result,

though the sexual abuse of Doe is a cognizable constitutional injury under the Due Process Clause, the allegations do not sufficiently plead Parker acted under color of state law. Harris's Complaint therefore would fail here against Domino as well.

B.     Clearly Established Right

Even if Harris could show that Domino violated Doe's constitutional rights, she must also show that the right violated was "clearly established" when the violation occurred. *Brinsdon*, 863 F.3d at 347 (quoting *Swanson*, 659 F.3d at 371). Domino argues this case is distinguishable from *Taylor* and that the contours of the right to bodily integrity "has not been expanded to include unwanted touching or sexual relations between individuals above the age of consent." Memo. in Support [28] at 6.

As discussed above, Domino's narrow view of the right to bodily integrity under the Due Process Clause conflicts with *Taylor* and later cases. Further, a precedent being distinguishable from a case at bar does not necessarily mean that a right is not "clearly established." *Taylor*, 15 F.3d at 454-55. (quoting *Jefferson v. Ysleta Indep. Sch. Dist.*, 817 F.2d 303, 305 (5th Cir. 1987) (holding that a "clearly established" right does not require a precedent "that is 'factually on all-fours with the case at bar' or that holds the 'very action in question' unlawful."). Domino is correct that to be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right, . . . a constitutional right is clearly established if 'in the light of

10

pre-existing law[,] the unlawfulness [is] apparent.'" *Id.* (internal citations omitted) (alteration in original).

In *Taylor*, the Fifth Circuit held "[t]he 'contours' of a student's substantive due process right to be free from sexual abuse and violations of her bodily integrity were clearly established in 1987." *Id.* The court held it was "crystal clear" that "[n]o reasonable public school official in 1987 would have assumed that he could, with constitutional immunity, sexually molest a minor student." *Id.* This conclusion is not fundamentally altered by fact that Doe was over the age of legal consent at the time of the alleged sexual abuse—particularly where he was seventeen years old and still a minor under Mississippi law. *See* Miss. Code Ann. § 1-3-27 (defining "minor" as "any person . . . under twenty-one years of age"). The Court therefore finds that Doe's constitutional right to be free from sexual abuse under the Due Process Clause was clearly established at the time of the alleged conduct.

C.  Harris's Request for Discovery

Harris requests that the Court allow her to conduct limited qualified immunity discovery if the Court finds the factual basis for Domino's liability insufficient. Harris, however, does not identify any specific factual issues that would benefit from discovery. Harris has failed to sufficiently plead Domino's knowledge of a pattern of behavior pointing toward sexual abuse, and she has failed to plead sufficient details about the nexus of Parker's role as guidance counselor and his sexual abuse of Doe. Harris does not need discovery for these issues as they are already within her knowledge, as the Plaintiff and Doe's mother.

11

For her failure to plead Domino's knowledge of behavior pointing toward sexual abuse, Harris does not allege any sexual abuse other than the attempted assault in March 2018. As Doe's mother, Harris does not need discovery to learn of any other instances of sexual abuse. Harris has not moved to amend her pleading to add allegations of sexual abuse, and she has not suggested that other acts of sexual abuse occurred.

As to her failure to provide the details surrounding the attempted assault and how they relate to Parker's role as guidance counselor, Harris does not need discovery as these facts are also in the purview of Doe's knowledge. Though this pleading deficiency may be curable by amendment, any amendment would be futile given Harris's failure to show Domino had knowledge of Parker's sexual abuse of Doe.

The Court therefore grants Domino's Motion for Qualified Immunity [27] as to the § 1983 claim against her in her individual capacity for the violation of Doe's Due Process right to bodily integrity.

IV.   Motion to Dismiss [25]

    A.   Official Capacity Claims

The Parties agree the claims against Parker and Domino in their official capacities are "another way of pleading an action against an entity of which an officer is an agent," in this case, JPSD. *Monell v. Dep't of Soc. Servs. of City of NY*, 436 U.S. 658, 690 n.55 (1978). Thus, Harris does not object to the dismissal of the claims against Parker and Domino in their official capacities. Response [30] at 2.

B.  Punitive Damages

The Parties agree Harris has no right to recover punitive damages against a government entity. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[W]e hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983."). The Court therefore dismisses any claim for punitive damages against JPSD.

C.  JPSD's Liability

Though local government entities can be liable under § 1983, the Supreme Court has held they "cannot be held liable under § 1983 on a *respondeat superior* theory." *Taylor*, 15 F.3d at 452 (5th Cir. 1994) (citing *Monell*, 436 U.S. at 691-94). Instead, "the municipality must cause the constitutional tort through the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Bolton v. City of Dallas, Tex.*, 541 F.3d 545, 548 (5th Cir. 2008) (quoting *Monell*, 436 U.S. at 694). To meet her pleading burden for her § 1983 claims against JPSD then, Harris's factual allegations must satisfy three elements: "a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell*, 436 U.S. at 694) (internal quotation omitted).

Because JPSD, like Domino, ignores the alleged constitutional violation for Parker's sexual harassment of Doe, the Court's analysis will focus only on the allegations that Doe's right to bodily integrity was violated. The § 1983 claim that

13

JPSD violated Doe's right against sexual harassment under the Fourteenth Amendment remains. Additionally, because the Court holds that Domino is not individually liable for the violation of Doe's bodily integrity, the Court's analysis will focus only on Parker's alleged violation.

### 1. Policymaker

To determine whether the policymaker prong of the *Monell* analysis is met, the Court must first "identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Bolton*, 541 F.3d at 548 (quoting *McMillian v. Monroe Cty.*, 520 U.S. 781, 784-85 (1997)). State law governs this inquiry. *Id.* (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).

Harris alleges "the unconstitutional actions of Gary Parker were encourage[d], approved, caused by, tolerated, permitted, or ratified by establish[ed] customs, policies, practices, or procedures established by the Jackson Public School Board . . . ." Compl. [1] ¶ 17. Harris identifies the Jackson Public School Board as the final policymaker, and JPSD agrees. Memo. in Support [26] at 8. Harris has therefore properly pleaded the policymaker prong of the *Monell* analysis.

### 2. Official Policy

The Fifth Circuit defines an "official policy" under *Monell* in two ways. First, an official policy can be "[a] policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [district]." *Eugene v. Alief Indep. Sch.*

*Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995) (quoting *Johnson v. Moore*, 958 F.2d 92, 93 (5th Cir. 1992)) (alterations in original). Second, an official policy can be "[a] persistent, widespread practice of [district] officials or employees, which . . . is so common and well settled as to constitute a custom that fairly represents [district] policy." *Id.* For this second definition, actual, or constructive knowledge must be attributable to the final policymaker. *Id.*

Harris does not allege JPSD's officially adopted policies caused a violation of Doe's constitutional rights. Instead, Harris lists several customs and practices resulting in JPSD's failure to train or investigate properly. Compl. [1] ¶ 17. Harris specifically alleges the following "customs, policies, or procedures" established by JPSD:

> a. Failing to adequately investigate the background and employment of teache[r]s;
>
> b. Failing to train teachers on how to handle and to report inappropriate attention from students of the opposite sex;
>
> c. Failing to train teachers to abstain from having sexual relations with students after students have attained the age of seventeen;
>
> d. Failing to train principals, teachers, and other employees on how to recognize and report a sexual relationship or inappropriate behavior between a teacher and a student;
>
> e. Failing to train principals and other employees to notify parents and supervisors when principals and/or other employees become aware of a sexual relationship between a teacher and student;
>
> f. Failing to conduct a reasonable investigation in response to a complaint that a counselor is having contact with a student;

g.  Failing to train principals and other employees on how to conduct a reasonable investigation in response to a complaint that counselor is making male students uncomfortable;

h.  Failing to train principals and other employees on how to properly supervise a counselor who is believed to have a sexual inclination towards male students;

i.  Failing to train principals and other employees oh how to provide additional training to a counselor who is having a sexual desires towards a student;

j.  Failing to train principals and other employees on how to provide counseling for students who have been sexually harassed/abused by a counselor;

k.  Failing to train principals and other employees on how to take reasonable action to respond to sexual harassment;

l.  Failing to train principals and other employees on how to protect students from violations of their constitutional right to person security and bodily integrity, including sexual harassment by that counselor; and

m.  Other unconstitutional customs or policies, which encourage sexual harassment by counselors and students.

*Id.* These "customs, policies, or procedures" are alleged failures of JPSD, not officially adopted policies. They therefore fall under the Fifth Circuit's second definition of "official policy."

For a practice or custom to be considered an official policy of JPSD, a pattern of unconstitutional conduct must be shown. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010) (citing *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1994) (en banc)). Absent a pattern of unconstitutional conduct, however, JPSD can still be liable if its alleged training inadequacies created a risk of constitutional violations which should have been "obvious" or "highly

16

predictable." *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018) (citing *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)). This exception is applied narrowly and only where the municipal entity "fail[ed] to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face." *Id.* (quoting *Canton*, 489 U.S. at 396 (O'Connor, J., concurring)).

Harris does not allege a pattern of constitutional violations under the Due Process Clause occurred. The Complaint specifies only one act of attempted sexual abuse in violation of Doe's bodily integrity. [1] ¶ 10. Nor do Harris's allegations demonstrate JPSD's employees were "certain to face" "recurrent situations" where they would have "a clear constitutional duty" to ensure the bodily integrity rights of their students. *See Littell*, 894 F.3d at 624 (quoting *Canton*, 489 U.S. at 396 (O'Connor, J., concurring)).

Harris urges the Court to apply a "common sense" approach to her claim against JPSD, arguing "it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery." Response [30] at 6 (quoting *E.G. by Gonzalez v. Bond*, No. 1:16-CV-0068-BL, 2016 WL 8672774, at *5 (N.D. Tex. Sep. 9, 2016)). But given that Harris alleges only practices and customs as "official policy," internal policies or training procedures are unnecessary to determine whether the results of these policies have been patterns of constitutional violations or whether JPSD's employees would face times when students' right to

17

bodily integrity would be violated through a faculty member's sexual abuse. *See Littell*, 894 F.3d at 624. The Court therefore finds Harris has failed to allege an official policy of JPSD under the *Monell* analysis.

### 3. Moving Force Behind Constitutional Violation

Because Harris fails to allege an official policy with respect to violations of students' right to bodily integrity, she also cannot establish that such a policy is the "moving force" behind Parker's alleged violation of Doe's rights.

To show that JPSD's actions were the "moving force" behind the violation of Doe's constitutional right to bodily integrity, Harris "must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Valle v. City of Houston*, 613 F.3d 526, 542 (5th Cir. 2010) (quoting *Brown*, 520 U.S. at 404). "Deliberate indifference" requires more than "a showing of simple or even heightened negligence." *Id.* (quoting *Piotrowski*, 237 F.3d at 579). Even if JPSD's failure to train its employees on sexual abuse was negligent, it does not rise to the level of deliberate indifference.

Harris cites *TC v. Valley Central School District*, 777 F. Supp. 2d 577 (S.D.N.Y. 2011), for her contention that JPSD is liable for deliberate indifference for any incidents occurring once school officials received notice of Parker's harassment of Doe. Response [30] at 6. That case is inapplicable here as it is a case from the Southern District of New York that dealt with harassment claims brought under Title VI. 777 F. Supp. 2d at 595-96. The Court finds this case unpersuasive as to

18

JPSD's alleged deliberate indifference to the violation of Doe's constitutional right to bodily integrity under the Due Process Clause and therefore concludes Harris's allegations do not succeed under this prong of the *Monell* analysis either.

D. Leave to Amend

Harris asks that the Court grant her leave to amend her Complaint if it finds her pleading insufficient under Rule 12(b)(6). When a plaintiff has failed to meet her pleading requirements, the Court "may dismiss" the complaint, but "should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunity to do so." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (citing *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 675-76 (2d Cir. 1991)). From the record before it, the Court is unsure, and JPSD has not argued, that the identified factual deficiencies in Harris's allegations against JPSD are incurable. Nor has the Court afforded Harris any previous chance to amend her pleading. The Court will therefore allow Harris fourteen days from the date of this order to amend her Complaint to cure the deficiencies in her § 1983 claim for the violation of Doe's constitutional right to bodily integrity against JPSD.

VI. Conclusion

The Court has considered all the arguments set forth by the parties. Those arguments not addressed would not have changed the outcome of the Court's decision. For these reasons, the Motion to Dismiss [25] and Motion for Qualified Immunity [27] are GRANTED.

The claims against Domino and Parker in their official capacities are dismissed with prejudice. All claims for punitive damages against JPSD are dismissed with prejudice.

Though the Court finds that the Complaint [1] fails to state a claim upon which relief can be granted as to the § 1983 claim against JPSD for the violation of Doe's constitutional right to bodily integrity under the Due Process Clause of the Fourteenth Amendment, Harris has fourteen days from the date of this order to cure the identified defects in her Complaint by amendment. This claim will be dismissed with prejudice should Harris fail to adequately amend her Complaint.

The § 1983 claim against Domino in her individual capacity for the violation of Doe's constitutional right to bodily integrity under the Due Process Clause of the Fourteenth Amendment is dismissed with prejudice.

The claims against Parker in his individual capacity and the § 1983 claims against Domino in her individual capacity and against JPSD for the violation of Doe's constitutional right against sexual harassment under the Equal Protection Clause of the Fourteenth Amendment remain.

SO ORDERED AND ADJUDGED this the 11th day of January, 2021.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT